Conant vs. Estate of Kimball.

CONANT, Respondent, vs. ESTATE OF KIMBALL, Appellant.

*January 18 — April 7, 1897.*

*Receipt in full, effect of: Avoiding.*

1. A receipt "in full of all demands to date," given to the owner of a farm by one who had worked on such farm under an agreement that he should be paid by a legacy in the will of the owner, but who had for six years ceased to work on the farm, covers such contract and shows a settlement of all claim for compensation for work under it. Such receipt contains in itself the elements of a contract, and therefore cannot be varied, explained, or contradicted by parol evidence.

2. Such a receipt may be avoided by clear proof of fraud or mistake, but it is not sufficient ground for avoiding it that the person who signed it did not fully understand its legal effect, where no fraud is shown.

APPEAL from a judgment of the circuit court for Fond du Lac county: N. S. GILSON, Circuit Judge. *Reversed.*

Plaintiff filed a claim in the county court of Fond du Lac county against the estate of Charles F. Kimball, deceased. Such claim was allowed, and the executor appealed to the circuit court. The issue respecting the claim was tried on appeal, and resulted in a finding in substance as follows: (1) Between March, 1873, and December 16, 1886, the deceased was a farmer residing on a farm in Fond du Lac county, during which time the claimant, *Benjamin F. Conant*, performed labor and services for the deceased as a farm hand, which were reasonably worth $2,056.25, no part of which has been paid except $150, the last of which was paid in August, 1891; (2) that such labor and services were performed under an agreement between the parties that *Conant* was to be paid therefor by a legacy to him to be made in the will of said Kimball; (3) that Kimball died November 23, 1893, leaving a will in which there was no bequest to *Conant*. On these findings, and others not necessary to note, the court concluded that *Conant* was entitled to recover $1,906.25, with interest thereon, and costs. Defendant duly excepted to the findings of fact and conclusion of law, and appealed from the judgment entered pursuant to such findings and conclusion.

*Edward S. Bragg*, for the appellant, took the ground that the alleged agreement as to payment for plaintiff's work was not proved. If there was any such agreement the plaintiff violated its conditions and forfeited compensation. Plaintiff's receipt was conclusive and showed a full settlement of the claim.

For the respondent there was a brief by *Felker, Stewart & Felker*, and oral argument by *F. C. Stewart*. They argued, among other things, that the plaintiff's receipt was open to explanation or contradiction. *Catlin v. Wheeler*, 49 Wis. 523; *Woodman v. Clapp*, 21 id. 353; *Smith v. Schulenberg*, 34 id. 41; *Crowe v. Colbeth*, 63 id. 643; 2 Parsons, Cont. (5th ed.), 556; 1 Greenl. Ev. § 305. On failure of the employer to

pay by legacy the plaintiff could recover on *quantum meruit.* *In re Bayliss v. Estate of Pricture,* 24 Wis. 651; *Jilson v. Gilbert,* 26 Wis. 637; *Estate of Kessler,* 87 Wis. 660.

The following opinion was filed February 2, 1897:

MARSHALL, J.   The findings of the trial court to the effect that the respondent worked for the deceased from 1873 to 1886 under a contract that the latter would compensate the former for his services by a legacy to be made in the latter's will, are challenged as not supported by the evidence, and such exception presents the first question for consideration.

If any contract was established, it was by evidence of declarations made by the deceased during his lifetime, and while the period of service was in progress, indicated by the following: Lydia Zahn testified that Kimball told her he was not paying *Frank* (meaning *Conant,* the respondent) anything, but that he was to have the property when Kimball was through with it.   Benjamin Strong testified, in effect, that Kimball stated to him that, if *Conant* stayed with him, Kimball, and his wife, *Conant* would have the farm and everything.   J. W. Hall testified, in substance, that Kimball stated to him that when he got through with this world *Frank* would have all that was left of his property.   A. C. Jelleff testified, in effect, that Kimball said to him that *Frank* was not working for him exactly; that he said, "It is understood between us that when I am done with the farm he will have it."   There was other evidence to the same effect.   It establishes that, if the work done by respondent was performed under a contract, such contract clearly was entire, and was to the effect that, if respondent remained with and served Kimball during his lifetime, *Conant* should have what was left of Kimball's property; hence the compensation agreed upon, if any, depended upon full performance on the part of *Conant* of the condition which required him to stay with Kimball during his life.   Now, the evidence is undisputed

that such condition precedent was not performed by respond-
ent.   He abandoned the deceased six years or more before
his death.  To be sure, there is some evidence, not of a very
satisfactory character, that deceased made statements from
time to time after *Conant* abandoned the former's service,
indicating a disposition to pay him for work already done,
notwithstanding his failure to remain to the end; but there
is no satisfactory evidence that the original agreement, if one
was made, was ever changed, while there is considerable
evidence to show that it was not changed, and that it was
understood between the parties that nothing was due to
*Conant* from the deceased, the most important and convinc-
ing of which is that shortly before the latter's death *Conant*
gave him a receipt, showing a full settlement of all matters
between them up to that time for the small sum of $10.  An
effort was made to avoid the *prima facie* effect of such re-
ceipt, but it stands as a strong circumstance in favor of the
defendant, and is so persuasive in that regard that, taken
with all the other evidence bearing on the subject, we hold
that there is no evidence in the record upon which the find-
ing of the trial court under consideration can stand.

But, if we concede that there is not such a preponderance
of evidence against the findings of fact, in respect to the con-
tract, that we can say there is no legitimate basis therefor,
yet the question must be met, presented by appellant's ex-
ception to the findings, in that the trial court did not decide
that all the claims and demands on the part of *Conant*
against Kimball were fully settled and discharged during
the latter's lifetime.  The evidence bearing on that question
is that prior to October 20, 1893, Kimball was advised by
one of his neighbors to get a receipt from respondent, as
there was some talk that the latter claimed to have a mort-
gage on deceased's farm; that, following such advice, de-
ceased visited respondent, accompanied by Mrs. Tabbert, on
which occasion the latter said, in Mrs. Tabbert's presence,

that Kimball did not owe him (respondent) a dollar; that the inquiry first made on this occasion by Kimball was whether respondent had any mortgage on the farm, and the reply was "No," and that deceased did not owe him (*Conant*) a dollar; that thereupon deceased requested respondent to give him a receipt, and make it in full of all demands, and put in $10 as the consideration to make it legal; that thereupon respondent drew, signed, and delivered to deceased an instrument, which is in the following words: "Ripon, Wis., Oct. 20, 1893. Received of C. F. Kimball, ten dollars in full of all demand to date;" that deceased paid to respondent the $10 mentioned in the receipt. Based on such evidence, appellant excepted to the findings, in that the court did not find and decide that whatever claim respondent had for compensation for service rendered Kimball was settled and discharged during the latter's lifetime. Certainly, such conclusion necessarily follows from the evidence mentioned, in the absence of evidence sufficient to impeach the instrument upon the ground of fraud or mistake, and we are unable to find such. Substantially the only evidence in that regard is that of Lydia Zahn, that shortly after the receipt was given deceased told her that he asked respondent to give him a receipt to show that the latter did not have a mortgage on the farm; that deceased told respondent to write the receipt in full, and that he, deceased, put it so respondent did not know what he was doing; that now, though deceased owed respondent, he could pay him what he was a mind to, for he had a receipt in full. Kimball was a man about seventy-nine years old at this time, and was blind. Respondent was a man of intelligence, was possessed of all his faculties, and was of considerable business ability. Such being the case, the evidence of Lydia Zahn as to what Kimball said is entirely insufficient to show that respondent did not know just what was included in the receipt, and that it in express terms covered all demands on his part against the deceased.

Conant vs. Estate of Kimball.

To avoid the force of the instrument, respondent's counsel invoke the very familiar rule that a *mere receipt* is always open to explanation, and may be varied or contradicted by parol evidence; citing *Catlin v. Wheeler*, 49 Wis. 523; *Woodman v. Clapp*, 21 Wis. 353; *Crowe v. Colbeth*, 63 Wis. 643; and other authorities. No citation is necessary to sustain a rule so elementary, but it must be borne in mind that such rule applies only to *receipts*, in the strict sense of the term. *Kellogg v. Richards*, 14 Wend. 116; *Kirkpatrick v. Smith & Co.* 10 Humph. 188. Where the instrument is in the form of and contains all the elements of a receipt, and also includes the elements of a contract, the latter part is governed by the same rules as other contracts, and cannot be varied, explained, or contradicted by parol evidence, though it may be set aside and avoided for fraud or mistake. *Schultz v. C. & N. W. R. Co.* 44 Wis. 638; *Butler v. Regents*, 32 Wis. 124; *Fire Ins. Asso. v. Wickham*, 141 U. S. 564; 1 Greenl. Ev. (Lewis' ed.), § 305, and cases cited; Jones, Ev. §§ 502, 503. A receipt in full of all claims is of such a character. *Henry v. Henry*, 11 Ind. 236, 71 Am. Dec. 354; *Grumley v. Webb*, 44 Mo. 444, 100 Am. Dec. 304. In *Randall v. Reynolds*, 52 N. Y. Super. Ct. 145, the form of the instrument was in full of all matters from the beginning of the world up to this date. The court held that the portion relating to the settlement of all demands up to date constituted a written contract, and could not be varied by parol. It was contended that the instrument was a mere receipt, and could be explained by parol evidence, and shown not to cover all demands. SEDGWICK, C. J., in rendering the opinion of the court, said: "If any part of the receipt was a contract, or of that nature, having a settlement or a release as its object, it could not be explained verbally. The words unambiguously referring to 'all matters between us' are not to be restrained to any particular demand or claims." See, also, 19 Am. & Eng. Ency. of Law, 1122–1124, and notes; *Burke v. Ray*, 40 Minn. 34.

Conant vs. Estate of Kimball.

Some language can be found in cases in this and other courts which, from a casual reading, may appear to be inconsistent with the conclusion that a receipt in full of all demands includes a contract, and is not open to explanation under the rule applicable to mere receipts. Perhaps the distinction between a release and discharge in the form of a receipt in full of all demands and a receipt strictly so called are not clearly maintained, but the apparent disregard of such distinction will disappear, and nothing remain in conflict with the principle here laid down, which is elementary in fact, when the facts of the case in which such apparent disregard occurs are understood. *Smith v. Schulenberg*, 34 Wis. 41, may be cited as an illustration of what is here said. The form of the receipt was, "Received $102.76 in full for all logs up to date." The fact established was that the words "in full for all logs up to date" were included in the receipt by mistake, therefore it was avoided in that respect and on that ground. In discussing the subject, Mr. Justice Cole said "the receipt was open to explanation and contradiction by oral testimony;" that is, as applied to the case, the contract portion of the receipt was subject to be avoided on the ground of mistake established by oral testimony. The rule applied was that applicable to all contracts of settlement; they may be avoided for fraud or mistake. The court obviously did not intend to apply to such instrument the rules applicable to a mere receipt.

The most that is claimed here is that respondent did not know the effect of the receipt, and did not intend to include all claims; but, in view of the fact that he was a man of considerable education and business attainments, was dealing with an old man, who, from blindness and other disability, was incapable of doing business without assistance, there is no evidence to sustain the theory that respondent was imposed upon, or made any mistake in respect to the language used in the instrument. A mere mistake in the legal effect will not do. As held in *Vedder v. Vedder*, 1

Denio, 257, the mere fact that respondent was not fully aware of the effect of what was required of him does not affect the instrument. „ He knew, or ought to have known, that what was requested and what he acceded to was an accord and satisfaction of all demands in his favor; and, in the absence of fraud, the court must give legal effect to the instrument.  To impeach the settlement for fraud or mistake would require clear and satisfactory evidence; not of mistake merely in respect to the effect of the language used, but mistake in respect to the language contained in the instrument.  Obviously no such claim can be made, as such instrument is in the handwriting of the respondent.  For that reason we must assume that the trial court looked upon such instrument as a mere receipt, and subject to the rules governing such a paper.  Such assumption furnishes the only reasonable explanation we can perceive of how the learned circuit judge reached the conclusion which he did. Considering the instrument as a contract between the parties, it cannot be contended seriously that there is sufficient evidence to avoid it for fraud or mistake.

The result of the foregoing is that the court erred in finding that there was a contract obligation resting on Kimball to compensate respondent after the latter abandoned the service of the former in 1886, and erred in not finding that during the lifetime of the deceased, for a sufficient consideration, the respondent settled, released, and discharged all demands which he had against the deceased.  Therefore the judgment of the court must be reversed, and the cause be remanded with directions to enter judgment in favor of the appellant in accordance with this opinion.

· *By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment in favor of the defendant for costs.

A motion for a rehearing was denied April 7, 1897.