[L. A. No. 3631.   Department Two.—February 15, 1916.]

'J. A. CARPENTER, Appellant, v. W. F. MARKHAM and CARRIE B. MARKHAM et al., Respondents.

BUILDING CONTRACT—ACCORD AND SATISFACTION—ESTOPPEL—PLEADING. In order to take advantage of an accord and satisfaction or an estoppel, the facts constituting the same must be pleaded.

ID.—BOND GIVEN TO OWNER—FINAL PAYMENT PRIOR TO TIME WHEN DUE—RECEIPT "IN FULL AS PER CONTRACT"—ACCORD AND SATISFACTION—ESTOPPEL—EXTRAS.—A bond given by a contractor to an owner to hold the owner harmless against loss occasioned by the owner's paying the final payment on the contract due thirty-five days after the completion of the work, prior to that time, and accepting a receipt for such payment "in full as per contract," do not constitute an accord and satisfaction, or an estoppel against setting up a claim for extras under the contract.

ID.—EXPLANATION OF RECEIPT—ACCORD AND SATISFACTION—ESTOPPEL.— Such a receipt can be explained, and it was error to regard the transaction as an accord and satisfaction, or as one creating an estoppel against claiming compensation for the extras, and to reject evidence of the transaction explaining the receipt.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial.   Eugene P. McDaniel, Judge.

The facts are stated in the opinion of the court.

Edward Winterer, for Appellant.

Andrew M. Strong, for Respondents.

HENSHAW, J.—This is an appeal from an order denying plaintiff's motion for a new trial.   Plaintiff, as contractor, entered into a contract with Carrie B. Shortman, since and now by marriage Carrie B. Markham, to construct for her a dwelling-house.   In recompense he was to receive the total sum of $6,440, payable in four separate installments of $1,610 each, the last payment to be due and payable, under the mechanic's lien law, thirty-five days after the completion of the work.   In terms the contract between the parties provided that compensation for additions, changes, and extras shall be agreed upon between the parties "at a fair and reasonable price . . . and the owner shall give the contractor

written authorization for the work, setting forth the changes to be made, the price to be paid and the extra time allowed for its execution. .... . This authorization shall be signed by both parties to the contract and shall be binding upon both. No extras will be allowed without agreement for the same. Changes thus made shall in no wise alter, make void, or in any other way affect the standing of the original contract.'' After the completion of the building and the payment by the owner of the last payment of $1,610, plaintiff contended that there was due him $540.21 for and on account of extra work. Defendant denying this, the present action followed. The court heard the evidence of plaintiff and of plaintiff's witnesses tending to show that all the items charged for in the extra work, material, and labor performed were actually supplied and performed, and that the reasonable value was the amount sued for. Evidence was also offered that when plaintiff made his demand upon defendant after payment by defendant of the $1,610 final payment, defendant did not question her liability to pay for these extras, but questioned only the amounts charged for them. The defendant, W. F. Markham, now the husband of defendant, Carrie B. Markham, and at the time her man of affairs, was the one through whom these negotiations were carried on and with whom these discussions were had. Indeed, there is in evidence a letter from defendant, W. F. Markham, admitting some liability on account of these extras, and declaring that when the plaintiff had finished some other work upon which he was engaged for defendant, defendant had expressed his intent to ''settle with him fair and square and was willing to pay him more than his due; that we would get together personally or by friendly arbitration if necessary.'' This evidence, legally sufficient to establish plaintiff's contention, was admitted under objection and subject to defendants' motion to strike it all out. Subsequently, and upon defendants' motion to this end, the court did strike out all of this evidence and gave judgment, so far as these controverted matters are concerned, for defendants.

The court based its ruling upon the following facts: Upon the completion of the building, and before the expiration of the thirty-five days during which the last payment must be withheld, defendants agreed with plaintiff to make him this last payment of $1,610 if he would execute an indemnity

CLXXII Cal.—8

bond protecting them against possible lien claimants. This indemnity bond declared that the principal and sureties were bound unto Carrie B. Shortman in the sum of $1,610, the conditions of the bond being that whereas Carpenter has carried the work to completion, and whereas the contract provides that the sum of $1,610 shall be due and payable thirty-five days after the final completion, and whereas Carrie B. Shortman is ready and willing to make the final payment provided the said Carpenter, as such contractor, shall hold her "harmless from any and all liens or encumbrances which may accrue and grow out of or be caused by the construction of that building, and the furnishing of any labor or material used in the construction of the same," therefore the principal and sureties declared themselves bound, in consideration of the payment of the $1,610 to Carpenter, to indemnify and save harmless Carrie B. Shortman from any and all cost, damages, and counsel fees and all other expenses which she may sustain by reason of the matters set forth. Accompanying this indemnity there was given to defendants a receipt in the following language:

"Received from Miss C. B. Shortman in full as per contract for house on lot 18 & 19, Morning Gate Tract in Los Angeles, Cal.

"J. A. CARPENTER."

Defendants' motion to strike out was based upon the contention that upon their faces these two instruments amounted to a release and discharge of defendants against all claims of plaintiff, and thus operated to estop him from proceeding to prove those claims. The motion was granted by the court, and plaintiff's case thus being without evidence to support it, judgment, as has been said, passed for defendants.

We may pass over certain well-founded objections which the appellant takes to the rulings of the court in this respect, the objections being that whether defendants' position be that there was an accord and satisfaction, or whether it be that these instruments raise an estoppel against plaintiff, in either case to be availed of the facts constituting the accord and satisfaction or the facts constituting the estoppel must have been pleaded. (*Davis* v. *Davis,* 26 Cal. 23, 39; [85 Am. Dec. 157]; *Etcheborne* v. *Auzerais,* 45 Cal. 121; *Landis* v. *Morrissey,* 69 Cal. 83, 86, [10 Pac. 258]; *Simmons* v. *Oullahan,* 75 Cal. 508, [17 Pac. 543]; *Dellapiazza* v. *Foley,*

112 Cal. 380, 386, [44 Pac. 727]; *Newhall* v. *Hatch,* 134 Cal. 269, 273, [55 L. R. A. 673, 66 Pac. 266]; *Chapman* v. *Hughes;* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982]; *Great Western Gold Co.* v. *Chambers,* 153 Cal. 307, [95 Pac. 151].) To rest this determination simply upon the fatal error of defendants to plead their satisfaction and accord or their estoppel would still leave the fundamental proposition in the case undecided. That proposition, stated in the form of a question, is: Do these instruments constitute such an accord and satisfaction or raise such an estoppel?

It is better for all concerned that this basic question be now decided. Considering the indemnity bond, it is quite plain that it deals with the premature advancement of the final payment of $1,610, and it deals with nothing else. It is designed to protect the owners who have made this premature payment against any ill consequences that may flow therefrom if liens should be filed and lien claimants exercise their undoubted right to resort to this fund. Neither directly nor indirectly does it say or intimate anything else or further. Analyzing next the receipt, that instrument, it is true, declares over plaintiff's signature that he has received (payment) "in full as per contract for house." But it is only a receipt, and a receipt is always open to evidence contradicting or explaining its terms. Even if it be considered a release instead of a mere receipt, the question of what is released thereby is open to explanation and elucidation by parol evidence. (Civ. Code, secs. 1647, 1648; *Stufflebeem* v. *Arnold,* 57 Cal. 11; *Field* v. *Austin,* 131 Cal. 379, 383, [63 Pac. 692]; *Moore* v. *Copp,* 119 Cal. 429, [51 Pac. 630]; *Jersey Island Dredging Co.* v. *Whitney,* 149 Cal. 269, [86 Pac. 509, 691]; *Davis* v. *Diamond Carriage etc. Co.,* 146 Cal. 59, [79 Pac. 596]; *California Packers Co.* v. *Merritt Fruit Co.,* 6 Cal. App. 507, [92 Pac. 509].) It was precisely this evidence in elucidation and explanation of this receipt which the court, after admitting it, struck out, with evidence touching the nature and value of the extras.

In so doing the court erred, and the order appealed from is therefore reversed, with directions to the trial court upon new trial to admit the excluded evidence, with such other legal evidence upon these matters as may be tendered by either party, and determine the litigation accordingly.

Melvin, J., and Lorigan, J., concurred.